## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JASON KUNTZ,** | **CASE NO. 1:15-cv-00767-SHR-GBC** |
| | |
| | **(JUDGE RAMBO)** |
| **Plaintiff,** | |
| | **MAGISTRATE JUDGE COHN** |
| **v.** | |
| | **REPORT AND** |
| **CAROLYN W. COLVIN,** | **RECOMMENDATION TO DENY** |
| **COMMISSIONER OF SOCIAL** | **PLAINTIFF'S APPEAL** |
| **SECURITY,** | |
| | |
| **Defendant.** | **Doc. 1, 9, 10, 11, 12, 13** |

## REPORT AND RECOMMENDATION

### I.   Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Jason Kuntz ("Plaintiff") for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act"), and Social Security Regulations, 20 C.F.R. §§404 *et seq*., 416 *et seq.* (the "Regulations").[1] The Court reviews the ALJ's decision under the deferential substantial evidence standard. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence supports the

---

[1] Part 404 governs disability insurance benefit applications and Part 416 governs SSI. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Like *Sims*, these regulations "are, as relevant here, not materially different" and the Court "will therefore omit references to the latter regulations." *Id.*

ALJ decision unless no "reasonable mind might accept [the relevant evidence] as adequate to support a conclusion." *Id.* (internal citations omitted). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). Plaintiff reported disability as a result of carpal tunnel syndrome and spine impairments, but underwent surgery for both within six months of his alleged onset date, and stopped receiving follow-up treatment within one month of his surgeries. Doc. 10. Plaintiff asserts that the ALJ should have included mental health limitations, but the only medical opinion regarding mental indicated that the limitations were non-severe, Plaintiff did not receive treatment from a mental health specialist during the relevant period, and mental status examinations were normal. Doc. 10. Plaintiff asserts remand is necessary to consider his sleep apnea, but does not allege any specific limitations that arose out of his sleep apnea. Doc. 10. Plaintiff reported sleepiness due to sleep apnea in July of 2012, and within a month he had undergone a sleep study and been prescribed a CPAP titration machine. Doc. 10. The record contains no subsequent complaints. Doc. 10. The ALJ relied on a lack of objective medical evidence, including two medical opinions supporting the RFC, and Plaintiff's conservative treatment beginning seven months after the alleged onset date to find that Plaintiff could perform a range of sedentary work on a regular and continuing basis despite degenerative disc disease and diabetes. Doc. 10. The Court would not direct a

verdict in Plaintiff's favor.  The Court recommends that Plaintiff's appeal be denied, the decision of the Commissioner be affirmed, and the case closed.

## II.    Procedural Background

On October 22, 2012, Plaintiff applied for SSI and DIB. (Tr. 130-41). On February 11, 2013, the Bureau of Disability Determination denied these applications, (Tr. 75-100) and Plaintiff requested a hearing.  (Tr. 113-14). On November 12, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 46-73). On November 27, 2013, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 8-27). Plaintiff requested review with the Appeals Council (Tr. 6-7), which the Appeals Council denied on April 1, 2015, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On April 20, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). June 30, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 9, 10). On July 10, 2015, Plaintiff filed a brief in support of the appeal ("Pl. Brief"). (Doc. 11). On August 10, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 12). August 18, 2015, Plaintiff filed a brief in reply ("Pl. Reply"). (Doc. 13). On September 10, 2015, the case was referred to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.   Standard of Review and Sequential Evaluation Process

To receive DIB or SSI, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *Id.* The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's

impairment prevents the claimant from doing any other work. *Id.*  Before step four, the

ALJ must also determine Plaintiff's residual functional capacity ("RFC"). *Id.*

The disability determination involves shifting burdens of proof. The claimant bears

the burden of proof at steps one through four.  If the claimant satisfies this burden, then

the Commissioner must show at step five that jobs exist in the national economy that a

person with the claimant's abilities, age, education, and work experience can perform.

*See Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of

proving disability within the meaning of the Act lies with the claimant. See 42 U.S.C. §

423(d)(5)(A).  Specifically, the Act provides that:

> An individual shall not be considered to be under a disability unless he
> furnishes such medical and other evidence of the existence thereof as the
> Commissioner of Social Security may require. An individual's statement as
> to pain or other symptoms shall not alone be conclusive evidence of
> disability as defined in this section; there must be medical signs and
> findings, established by medically acceptable clinical or laboratory
> diagnostic techniques, which show the existence of a medical impairment
> that results from anatomical, physiological, or psychological abnormalities
> which could reasonably be expected to produce the pain or other symptoms
> alleged and which, when considered with all evidence required to be
> furnished under this paragraph (including statements of the individual or his
> physician as to the intensity and persistence of such pain or other symptoms
> which may reasonably be accepted as consistent with the medical signs and
> findings), would lead to a conclusion that the individual is under a disability.

42 U.S.C. § 423(d)(5)(A); 42 U.S.C.A. § 1382c(a)(3)(H)(i).

When reviewing the denial of disability benefits, the Court must determine

whether substantial evidence supports the denial. *Johnson v. Commissioner of Social*

*Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of

review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Stated differently, this standard is met if there is sufficient evidence 'to justify, if the trial were to a jury, a refusal to direct a verdict.'" *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951)).

## IV.    Relevant Facts in the Record

Plaintiff was born in 1973 and was classified by the Regulations as a younger individual throughout the relevant period. (Tr. 22); 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a ground maintenance worker, plastics production worker, and laborer in gutters construction. (Tr. 22). Plaintiff alleges onset on March 15, 2012. (Tr. 13). Plaintiff earned enough income to be insured[2] through December 31, 2017. (Tr. 13). In connection with his application for benefits,

---

[2] Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." See 20 C.F.R. §§ 404.130-134.

Plaintiff reported and testified that he would be unable to work on a regular and continuing basis because he would need to take additional breaks to lay down throughout the day, had problems sleeping, had decreased concentration due to pain, blurred vision, and decreased interest and energy. (Tr. 48-65; 171-81).

Plaintiff alleges onset on May 15, 2012. (Tr. 13). On May 7, 2012, Plaintiff presented to primary care provider Dr. Kenneth Varano, D.O., with complaints of a swollen eye and hand pain. (Tr. 312). Plaintiff denied blurred vision. (Tr. 312). Examination was normal except obesity and a swollen eye. (Tr. 312). The next day, Plaintiff presented to the emergency room for a syncopal episode. (Tr. 310). The record does not contain evidence of this visit. Doc. 10. On May 31, 2012, Plaintiff denied back pain but reported joint pain in his hands and wrists. (Tr. 310). Examination was normal and there is no record of vision complaints. (Tr. 310). Dr. Varano scheduled diagnostic studies. (Tr. 311). In June of 2012, EMG indicated "severe" bilateral carpal tunnel syndrome and "mild" sensory neuropathy with no evidence of radiculopathy. (Tr. 215). Neurologist Dr. Shahzad Khan, M.D. noted that Plaintiff reported "intermittent" numbness and tingling. (Tr. 216). Examination was normal except for positive Tinel's sign with intact sensation, no weakness, good motor strength, and normal reflexes. (Tr. 216). Plaintiff continued reporting carpal tunnel syndrome in October of 2012. (Tr. 337). In November of 2012, Plaintiff underwent a carpal tunnel release. (Tr. 339). Ten days after the release, Plaintiff reported his hand was improving, his pain was "1-2/10 and

states there is no numbness or tingling." (Tr. 473). Plaintiff was instructed to avoid "heavy" lifting, pushing, and pulling. (Tr. 475). The record contains no evidence of subsequent hand or wrist complaints. Doc. 10.

On July 5, 2012, Plaintiff presented to Dr. Khan for syncope and sleep problems. (Tr. 208-09). Plaintiff reported that he had been "at work" on May 8, 2012 when he coughed multiple times and had a syncopal episode. (Tr. 208). Plaintiff reported blurred vision after multiple coughs. (Tr. 208). Plaintiff reported daytime sleepiness and daytime naps. (Tr. 208-09). Physical and mental examinations were normal except for enlarged tonsils, depressed reflexes, and decreased sensation in his hands. (Tr. 209-10). Dr. Khan prescribed Ambien. (Tr. 211). On July 20, 2012, a sleep study indicated obstructive sleep apnea and recommended a CPAP titration. (Tr. 221). Plaintiff was instructed to avoid "avoid alcohol, benzodiazepine, and benzodiazepine type medications, which could make the patient's sleep disordered breathing worse." (Tr. 221).

On July 9, 2012, Plaintiff presented to the emergency room with complaints of back pain that began "about five days ago." (Tr. 243). Examination indicated muscle spasm, decreased range of motion, and tenderness. (Tr. 244).  Providers prescribed Vicodin, Robaxin, and naproxen. (Tr. 212, 244). On July 24, 2012, Plaintiff followed-up with Dr. Khan and reported twenty years of back pain with progressive worsening. (Tr. 212). Examination indicated positive straight leg raise. (Tr. 215). Dr. Khan referred Plaintiff to an orthopedist for back pain (Tr. 215). Plaintiff continued reporting back pain

and exhibiting objective findings, like positive straight leg raise and tenderness (Tr. 303), a limp, tenderness, painful range of motion, decreased reflexes, hypersensitivity, and positive Trendelburg sign. (Tr. 479). Plaintiff reported that he was using pain medication only "sparingly." (Tr. 331).  X-rays and MRIs documented objective abnormalities. (Tr. 238, 241, 364, 379).

In October of 2012, surgeon Dr. Falatyn opined that Plaintiff was "appropriate for [short term disability]" because he "cannot work at this time." (Tr. 334).  Plaintiff denied vision changes, weakness, numbness, dizziness, depression, sleep disturbance, and fatigue. (Tr. 610). Dr. Falatyn subsequently indicated that Plaintiff would likely be unable to "return to work" for six months after the surgery, which would total more than twelve months since he stopped working in May of 2012. (Tr. 480). Dr. Falatyn did not indicate whether he meant return to Plaintiff's past work as a maintenance worker or if he meant return to any work. (Tr. 480). Plaintiff underwent spine fusion surgery in November of 2012. (Tr. 565, 595). In December of 2012, Plaintiff reported "good relief" from his surgery, Plaintiff reported moving around better and sitting better, and continued taking Vicodin and Robaxin. (Tr. 609-11). Plaintiff had diminished reflexes, hypersensitivity, and a limp. (Tr. 611). Plaintiff denied vision changes, weakness, numbness, dizziness, depression, sleep disturbance, and fatigue. (Tr. 610). Plaintiff did not follow-up after this visit. Doc. 10.

By January of 2013, a consultative examiner observed normal objective findings except "slow antalgic gait." (Tr. 632). There was no evidence of diabetic retinopathy. (Tr. 632). Examination indicated:

EXTREMITIES: There is no evidence of pedal edema, clubbing, cyanosis or calf tenderness. Homans sign is negative bilaterally. There is no evidence of peripheral vascular insufficiency or chronic venous stasis changes. There is normal hair growth on the lower extremities. Peripheral pulses: Radial, brachial, popliteal, dorsalis pedis and posterior tibial pulses are +2 and equal throughout which is normal. Femoral pulse could not be obtained due to obesity. There are no arterial bruits noted. Straight leg raising is negative to 50 degrees bilaterally. Sitting root test is negative bilaterally with back pain though no radicular symptoms.

**MUSCULOSKELETAL:**

CERVICAL SPINE: Examination of the cervical spine reveals no tenderness over the spinous processes. There is no evidence of paravertebral muscle spasm.

DEEP TENDON REFLEXES: The biceps, triceps, brachioradialis, patellar, and Achilles deep tendon reflexes are graded at +2/4 bilaterally and symmetrically. This is a normal finding. Babinski is downgoing bilaterally. There is no clonus or fasciculations or spasticity. There is no cogwheeling rigidity noted.

SHOULDERS, ELBOWS, WRISTS: The shoulders, elbows and wrists are nontender. There is no redness, swelling or warmth. There are no nodules present.

HANDS: Examination of the hands reveals no tenderness, redness, warmth, swelling, or nodules. There are bilateral scars from recent carpal tunnel surgery. There is no atrophy. There are no Heberden's or Bouchard's nodes. The claimant is able to make a fist bilaterally. The claimant is able to open a jar, open a door, pick up coins, write, and use the hands to button and unbutton without problem. Grip strength measures 22 kg of force on the right and 18 kg of force on the left.

KNEES: Examination of the knees reveals no tenderness, redness, warmth, swelling, effusion, laxity, crepitus, or clicks.

HIPS: Examination of the hips reveal no tenderness to palpation.

DORSOLUMBAR SPINE: Examination of the dorsolumbar spine reveals normal curvature. There is a 12 cm recent incision without evidence of infection, drainage or inflammation. There is no evidence of paravertebral muscle spasm. Percussion of the spinous processes is not associated with tenderness. The claimant was not able to stand on one leg at a time. The right leg measures 47 cm at mid calf and 69 cm at mid thigh. The left leg measures 48 cm at mid calf and 68 cm at mid thigh. The right arm measures 37 cm at mid biceps and 32 cm at mid forearm. The left arm measures 37.5 cm at mid biceps and 33 cm at mid forearm. There is no evidence of muscle weakness or atrophy noted.

NEUROLOGIC: MENTAL STATUS: The claimant was awake, alert and oriented to time, place, and person and was able to engage in appropriate conversation, answer questions appropriately and follow directions. Affect was appropriate to the situation. The claimant is right-handed. CRANIAL NERVES: Cranial nerves 11- XII are intact. STATION AND GAIT: The claimant was not able to walk on the heels, not able to walk on the toes, not able to walk heel-to-toe and he was not able to squat. SENSORY: Sensory exam is intact to light touch, pinprick and vibration as well as proprioception. MOTOR: 5/5 strength in the upper and lower extremities bilaterally. CEREBELLAR: There is no ataxia or unsteadiness of gait. Cerebellar function is normal when tested with finger-to-nose, heel-to-shin, rapid alternating movements, and Romberg test with both eyes open and closed.

(Tr. 634-35). The examiner, Dr. McLaughlin, opined that Plaintiff could perform a range of sedentary work, standing for 1-2 hours, sitting for eight hours, never performing postural movements, and no limitations in reaching, handling, fingering, or feelings. (Tr. 637-38).

On February 11, 2013, Dr. Catherine Smith, M.D., reviewed the file and authored an opinion that Plaintiff could perform a range of light work. (Tr. 84). Dr. Smith noted

that Plaintiff had filled out his own forms, underwent carpal tunnel surgery within six months of the alleged onset date, with improvement thereafter, underwent spine surgery within six months of the alleged onset date, and improved thereafter, his surgery proceeded without complications, and Dr. McLaughlin observed largely normal findings. (Tr. 84, 91). Dr. Smith opined that Plaintiff had no manipulative limitations and could perform postural movements occasionally or frequently. (Tr. 82-83).

With regard to mental health, the only medical expert in the record opined that Plaintiff's mild limitations in activities of daily living, social functioning, and concentration, persistence, or pace were non-severe. (Tr. 81).

The only subsequent treatment records are from Dr. Varano in October of 2013. (Tr. 658). Examination was normal and Plaintiff reported that his back pain was stable. (Tr. 657). By October 24, 2013, Plaintiff was assessed to have abnormal liver function, hypertension, diabetes, and GERD, but not back pain. (Tr. 650).

## V.   Plaintiff Allegations of Error

### A. Step Five

Plaintiff asserts that the ALJ's VE hypothetical lacked specificity because it contained a "sit/stand every thirty minutes" option but did not address how often Plaintiff would need to walk around. (Pl. Brief at 17). The ALJ's RFC is sufficiently clear that Plaintiff would be either sitting or standing, not sitting, standing, or walking. (Tr. 16). In other words, the RFC excluded additional limitations relating to a need to leave the work

area and walk around. *Id.* Consequently, Plaintiff's challenge regarding how often Plaintiff would need to walk around is essentially a challenge to the ALJ's RFC, which did not include limitations relating to walking around. As the Third Circuit explained in *Rutherford v. Barnhart*, 399 F.3d 546 (3d Cir. 2005):

> [O]bjections to the adequacy of hypothetical questions posed to a vocational expert often boil down to attacks on the RFC assessment itself. That is, a claimant can frame a challenge to an ALJ's reliance on vocational expert testimony at step 5 in one of two ways: (1) that the testimony cannot be relied upon because the ALJ failed to convey limitations to the vocational expert that were properly identified in the RFC assessment, or (2) that the testimony cannot be relied upon because the ALJ failed to recognize credibly established limitations during the RFC assessment and so did not convey those limitations to the vocational expert. Challenges of the latter variety (like Rutherford's here) are really best understood as challenges to the RFC assessment itself.

*Id.* at 554, n. 8. The Court will address below whether the ALJ should have included additional walking limitations in the RFC. *Infra.*

Plaintiff asserts that a limitation to "sit/stand every thirty minutes" does not specify the frequency at which Plaintiff will alternate sitting and standing. (Pl. Brief at 16-17) (citing SSR 96-9p). Judge Conoboy has remarked that that a similar argument "borders on the disingenuous," writing:

> Plaintiff argues here that the ALJ's requirement that the Plaintiff work only at a job where she "can alternate sitting and standing at will" is "too vague to determine the extent of the erosion on the occupational base." (R.21 and Doc. 11 at 21). This argument borders on the disingenuous.

> The ALJ's directive that the Plaintiff may sit or stand "at will" constitutes a clear direction that it is for the Plaintiff to determine when and for how long she sits or stands. There is no indication that the VE was in any manner

confused by this directive. Plaintiff's argument unaccountably suggests that the ALJ's directive would *require* the Plaintiff to sit and stand for specified periods of time. Plaintiff's interpretation of the ALJ's "sit/stand at will" requirement is simply inaccurate and the Court finds that the VE properly factored the "sit/stand at will" requirement into her analysis of what jobs the Plaintiff could perform. Accordingly, the VE's assessment of the Plaintiff's employability was appropriately credit by the ALJ.

*Nicholson v. Colvin*, No. 3:14 CV-1819, 2015 WL 1275365, at *10 (M.D. Pa. Mar. 19, 2015) (Conoboy, J.); see also *Orndorff v. Colvin*, No. 114CV02465CCCGBC, 2016 WL 1458408, at *13 (M.D. Pa. Mar. 9, 2016), *report and recommendation adopted,* No. 1:14-CV-2465, 2016 WL 1450172 (M.D. Pa. Apr. 13, 2016);  *Ritz v. Colvin*, No. 115CV00388CCCGBC, 2016 WL 1458914, at *15 (M.D. Pa. Mar. 9, 2016), *report and recommendation adopted,* No. 1:15-CV-388, 2016 WL 1450181 (M.D. Pa. Apr. 13, 2016); *Nicholson v. Colvin,* No. 3:14 CV–1819, 2015 WL 1275365, at *10 (M.D. Pa. Mar. 19, 2015); *Torres v. Colvin,* No. 3:14–cv–00144 (M.D. Pa. Oct. 30, 2015); *Minichino v. Colvin,* 955 F.Supp.2d 366, 381 (M.D. Pa. 2013). Like sitting or standing at will, sitting or standing every thirty minutes specifies the frequency at which Plaintiff would alternate sitting and standing. *See* SSR 96-9p. Plaintiff asserts that the ALJ's omission of the word "option" renders the sentence defective, but the Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013); (Pl. Reply at 7). At the hearing, the ALJ specified that it was a

sit/stand "option" every thirty minutes. (Tr. 68). The Court does not recommend remand on these grounds.

The Court also notes that Plaintiff was represented by counsel at the hearing. (Tr. 68-70). Counsel had an opportunity, at that time, to determine whether the VE properly understood the ALJ's sit/stand option with regard to frequency. (Tr. 68-70).  Instead, Counsel chose not to question the VE regarding this alleged ambiguity. (Tr. 68070). Plaintiff is essentially arguing that there is new and material evidence that would be discovered if the case were remanded for more VE testimony. When Plaintiff argues that remand is required for new and material evidence, Plaintiff must establish that Plaintiff had good cause for failing to submit the evidence to the ALJ the first time around. *See* 42 U.S.C. §405(g) (The Court may "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359; (3d Cir. 2011); *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001); *Szubak v. Secretary of Health and Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984).  The ALJ bears the burden of producing vocational evidence at step five, but neither 42 U.S.C. §405(g) nor *Matthews* limit the good cause requirement to steps one through four. *Id.*; *Matthews*, 239 F.3d at 593.

The rationale for the good cause requirement applies equally to vocational evidence. *Matthews* explained:

> It might seem ... that the district judge and we would be free to consider the new evidence that was before the Appeals Council in deciding whether the decision denying benefits was supported by the record as a whole. And of course this is right when the Council has accepted the case for review and made a decision on the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts. It is wrong when the Council has refused to review the case. For then the decision reviewed in the courts is the decision of the administrative law judge. The correctness of that decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him....

*Id.* (quoting *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993)). The Court continued:

> Our holding is also in accord with sound public policy. We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. *See Szubak*, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled.") (quotation omitted); *Wilkins,* 953 F.2d at 97 (Chapman, J., dissenting) ("By allowing the proceedings to be reopened and remanded for additional evidence, ... the majority is encouraging attorneys to hold back evidence and then seek remand for consideration of evidence that was available at the time of the ALJ hearing."). Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.

*Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001). In *Matthews*, the Court held that the claimant "should have known" the additional evidence, a vocational evaluation, was necessary. *Id.* Consequently, the claimant failed to establish good cause. *Id.*

Plaintiff should have known that, if he was going to claim that he was disabled because of the frequency at which he would sit or stand, that VE evidence would be necessary. *Id.* Allowing a claimant to secure a remand for a lack of specific VE testimony when claimant could have elicited the specific VE testimony at the hearing incentives claimants to refrain from questioning the VE to secure a "second bite at the apple." *Id.* The ALJ cannot be expected to question the VE regarding every possible limitation Plaintiff might allege on appeal, or anticipate alleged ambiguities when no objection is made at the time. *cf. Allen v. Colvin*, No. 1:12-CV-1624, 2014 WL 972188, at *2 (M.D. Pa. Mar. 12, 2014) ("we note that counsel on appeal was not the attorney who handled the initial disability hearing before the ALJ. That hearing counsel in our view properly chose not to raise any claims of bias, and thus waived these claims"); citing *Hummel v. Heckler*, 736 F.2d 91, 94 (3d Cir.1984); *Grant v. Shalala,* 989 F.2d 1332, 1339 (3d Cir.1993). Plaintiff has not demonstrated that "sit/stand every thirty minutes" is ambiguous with regard to frequency or that Plaintiff had good cause for failing to elicit more specific VE testimony when presented with the opportunity. *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## B. Mild Mental Health Limitations

Plaintiff asserts that the ALJ "fail[ed] to consider" mild limitations assessed at steps two and three. (Pl. Brief at 22). However, "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision." SSR 06-3p; *see also Phillips v. Barnhart*, 91 Fed.Appx. 775, 780 (3d Cir. 2004) ("the ALJ's mere failure to cite specific evidence does not establish that the ALJ failed to consider it") (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998)). Moreover, the ALJ explicitly acknowledged these mild limitations, and explained that additional RFC limitations were not necessary because "no formal mental health treatment, therapy, or psychological admissions are noted in the evidence. Mental status examination findings noted by providers are routinely within normal limits…depression and anxiety, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities." (Tr. 14).

Plaintiff asserts that the ALJ failed in including mild limitations in activities of daily living; social functioning; and concentration persistence and pace in the RFC assessed at steps two and three. (Pl. Brief at 20). Defendant responds that mild limitations at steps two and three do not automatically translate into limitations in the RFC. (Def. Brief at 19) (citing SSR 96-8p) ("The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form

(PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF").

In Reply, Plaintiff does not cite any specific additional limitations that should have been included in the RFC. (Pl. Reply at 10).  Plaintiff cannot demonstrate that any error was harmful without identifying the additional limitations the ALJ should have included in the RFC. *See Rutherford v. Barnhart,* 399 F.3d 546, 552–53 (3d Cir.2005) (Remand is not appropriate where ALJ's error does not affect the ultimate outcome); 28 U.S.C.A. § 2111 ("[T]he court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."). In *Rutherford*, the Court held that any error in evaluating the claimant's obesity was harmless because:

> [Claimant] has not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes

> it more difficult for her to stand, walk and manipulate her hands and fingers. That generalized response is not enough to require a remand.

*Rutherford*, 399 F.3d at 553. Plaintiff cites a variety of cases from another District that hold that it is an error of law to fail to include mild mental limitations in the RFC or that the error is inherently harmful. (Pl. Brief at 20). However, the Court may not deviate from the binding precedent in *Rutherford* based on District Court cases. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (internal citations omitted). Plaintiff's failure to cite any specific additional limitations renders this allegation of error a "generalized response [that] is not enough to require remand." *Rutherford*, 399 F.3d at 553. Pursuant to *Rutherford*, Plaintiff has failed to demonstrate that any error was harmful. *Id.* The Court does not recommend remand on these grounds.

Plaintiff noted that two jobs identified by the VE require a reasoning level of three. (Pl. Brief). To the extent Plaintiff is asserting that reasoning level is a specific additional limitation, the Court would hold that substantial evidence supports the ALJ's decision that no additional reasoning level limitations were necessary in the RFC. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Plaintiff would have to demonstrate that he was incapable of performing reasoning level 3 jobs, which requires an individual to "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." (Pl. Brief at 23). The only medical expert in the record opined that Plaintiff's mild limitations in activities of daily living, social functioning, and

concentration, persistence, or pace were non-severe. (Tr. 81). A non-severe impairment is a "slight abnormality" causing "no more than a minimal effect on an individual's ability to work." *Bowen v. Yuckert*, 482 U.S. 137, 154, 107 S. Ct. 2287, 2298, 96 L. Ed. 2d 119 (1987). "[E]ven if an individual were of advanced age, had minimal education, and a limited work experience, an impairment found to be not severe would not prevent him or her from engaging in SGA." SSR 85-28. If an impairment is non-severe, then Plaintiff retains "the ability to perform basic work activities, as required in most jobs. Examples of these are…seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." *Id.* Consequently, the medical opinion supports the ALJ's determination that no additional limitations were necessary regarding carrying out instructions or solving problems in standardized situations. *Id.*

There is a "possibility" that non-severe impairments may combine with other impairments to create more than minimal work related limitations. *Id.* The ALJ must consider non-severe and severe impairments at subsequent steps. *Id.* Plaintiff does not cite any evidence of additional limitations beyond the medical opinion. (Pl. Brief at 20-22); (Pl. Reply). However, the medical opinion opined Plaintiff's mental limitation was non-severe. (Tr. 80-81).  Standing alone, an opinion that an impairment is non-severe cannot demonstrate that additional limitations should have been included in the RFC. *See*

Local Rule 84.40.4(b) ("The court will consider only those errors specifically identified in the briefs"). Defendant noted that Plaintiff's mental status examinations were normal. (Def. Brief at 14) (citing Tr. 209, 213, 244, 367, 401). Plaintiff does not reply to this argument. (Pl. Reply).  Plaintiff fails to demonstrate that no reasonable person would have omitted additional work-related limitations arising out of a non-severe mental impairment, alone or in combination. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend remand on these grounds.

### C. Sleep Apnea

Plaintiff asserts that the ALJ erred in failing to find that her sleep apnea was a medically determinable impairment at step two because she was diagnosed with sleep apnea and complained of daytime fatigue and sleepiness on one occasion. (Pl. Brief at 7) (citing Tr.210, 22). Defendant responds that Plaintiff has failed to establish harmful error. (Def. Brief at 13) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). Plaintiff replies that Defendant has conceded error, so the Court should remand. (Pl. Reply at 2). However, the issue is not whether Defendant conceded error, the issue is whether the error alleged by Plaintiff was harmful. *Rutherford*, 399 F.3d at 553. Pursuant to *Rutherford*, Plaintiff must identify specific additional limitations that the ALJ should have included in the RFC. *Id.* Daytime fatigue and sleepiness are not specific limitations to work related functions. *Id.* Plaintiff fails to establish harmful error with regard to sleep apnea. *Id.* Plaintiff notes that Defendant is prohibited from making post-hoc

rationalizations to justify the ALJ's treatment of sleep apnea. (Pl. Brief at 7). However, Defendant did not need to come up with post-hoc rationalizations because Plaintiff failed to allege harmful error beyond a "generalized response." *Rutherford*, 399 F.3d at 553. Plaintiff fails to demonstrate that no reasonable person would have omitted additional work-related limitations arising out of sleep apnea, alone or in combination. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court does not recommend remand on these grounds.

### D. Credibility

Plaintiff asserts that the ALJ erred in assessing his testimony that he had blurry vision and no energy and that he had pain arising out of back impairments that would require additional breaks throughout the day and decrease his concentration and focus. (Pl. Brief at 10). In support of his testimony regarding blurry vision and no energy, Plaintiff cites only his diabetes diagnosis. (Pl. Brief at 10). In support of his testimony regarding back pain, Plaintiff cites objective findings relating to back pain and asserts that the "mere fact that Mr. Kuntz has had fusion surgery on his spine is sufficient to show medical evidence regarding his back pain." (Pl. Brief at 10-11).

When evaluating credibility:

> An ALJ must give serious consideration to a claimant's subjective complaints of pain, even where those complaints are not supported by objective evidence. *Ferguson v. Schweiker,* 765 F.2d 31, 37 (3d Cir.1985). "While there must be objective evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green,* 749 F.2d at 1071. Where medical evidence does support a

claimant's complaints of pain, the complaints should then be given "great weight" and may not be disregarded unless there exists contrary medical evidence. *Carter,* 834 F.2d at 65; *Ferguson,* 765 F.2d at 37.

*Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993). Plaintiff asserts that the ALJ should have given his testimony "great weight." (Pl. Brief at 13); (Pl. Reply at 4). However, while Plaintiff produced objective evidence of an underlying condition that could reasonably produce pain, Plaintiff did not produce objective evidence of pain itself. *Id.* Consequently, his testimony was entitled to "serious consideration," but not great weight. *Id.*

When making a credibility finding, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96-7P. Then:

> [T]he adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7P; *see also* 20 C.F.R. § 416.929. "Under this evaluation, a variety of factors are considered, such as: (1) 'objective medical evidence,' (2) 'daily activities,' (3) 'location, duration, frequency and intensity,' (4) medication prescribed, including its effectiveness and side effects, (5) treatment, and (6) other measures to relieve pain." *Daniello v.*

*Colvin*, CIV. 12-1023-GMS-MPT, 2013 WL 2405442 (D. Del. June 3, 2013) (citing 20 C.F.R. § 404.1529(c)).

Plaintiff asserts that the ALJ erred in evaluating his activities of daily living. The Court assumes without deciding that the ALJ erred in evaluating his activities of daily living. "[W]hether the error is harmless depends on whether the other reasons cited by the ALJ…provide substantial evidence for her decision." *Brumbaugh v. Colvin,* 3:14–CV–888, 2014 WL 5325346, at *16 (M.D.Pa. Oct. 20, 2014). The ALJ also relied on a lack of objective medical evidence, the consultative examining opinion, and Plaintiff's lack of treatment after December of 2012, seven months after his alleged onset date. (Tr. 21).

Plaintiff asserts that the ALJ was not entitled to rely on the objective medical evidence because the ALJ was engaging in lay interpretation of medical evidence. (Pl. Brief at 13). Plaintiff asserts that the ALJ's analysis of the objective evidence had "no support from a physician opinion." (Pl. Brief at 13). However, the ALJ's interpretation of how objective findings would impact Plaintiff's functional limitations is supported by Dr. McLaughlin. (Tr. 630-38). Dr. McLaughlin opined that Plaintiff would be able to work on a regular and continuing basis in sedentary work. (Tr. 630-38). The ALJ did not adopt Dr. McLaughlin's opinion that Plaintiff could not perform any postural movements. (Tr. 21). However, to the extent the ALJ erred in not adopting these postural limitations, the error was harmless, because at least one position identified by the VE does not require

postural movements. *Rutherford*, 399 F.3d at 553. The Dictionary of Occupational Titles

provides that, for a Surveillance System Monitor:

> Climbing: Not Present - Activity or condition does not exist
> Balancing: Not Present - Activity or condition does not exist
> Stooping: Not Present - Activity or condition does not exist
> Kneeling: Not Present - Activity or condition does not exist
> Crouching: Not Present - Activity or condition does not exist
> Crawling: Not Present - Activity or condition does not exist
> Reaching: Not Present - Activity or condition does not exist
> Handling: Not Present - Activity or condition does not exist
> Fingering: Not Present - Activity or condition does not exist
> Feeling: Not Present - Activity or condition does not exist

379.367-010     SURVEILLANCE-SYSTEM     MONITOR,     DICOT     379.367-010.

Consequently, a medical expert opinion supports the ALJ's conclusion that the objective

medical evidence did not support limitations precluding Plaintiff from working as a

surveillance system monitor.

The VE testified that there were 200 surveillance system monitor jobs in the

economy. (Tr. 69). There were sufficient jobs in the local economy that Plaintiff could

perform, even if limited to only rarely stooping. *See Craigie v. Bowen*, 835 F.2d 56, 58

(3d Cir.1987) (200 jobs in regional economy "is a clear indication that there exists in the

national economy other substantial gainful work which [a plaintiff] can perform."); *see*

*also* SSR 00-4p (DOT can provide vocational evidence); *Hawk v. Colvin*, 1:14-CV-337,

2015 WL 1198087, at *20 (M.D. Pa. Mar. 16, 2015) (Failure to include kneeling

limitation was harmless, where DOT provided that the position did not require kneeling)

(citing *Rochek v. Colvin*, 2:12–CV–01307, 2013 WL 4648340 at *12 (W.D. Pa. Aug. 23,

2013) ("A number of other courts have found harmless error where an alleged limitation that was not included in the ALJ's hypothetical (or in the RFC) was not necessary to perform one or more of the jobs identified by the VE, according to the DOT")); *Sweeney v. Colvin*, 3:13-CV-02233-GBC, 2014 WL 4294507, at *17 (M.D. Pa. Aug. 28, 2014) (citing *Shorey v. Astrue*, 1:11–CV–414–JAW, 2012 WL 3475790 at *6 (D.Me. July 13, 2012) aff'd, 1:11–CV–00414–JAW, 2012 WL 3477707 (D.Me. Aug.14, 2012); *Connor v. Colvin*, 1:13–CV–00219–JAW, 2014 WL 3533466 at *4 (D.Me. July 16, 2014)(internal citations omitted); *Barela v. Astrue*, CV–09–01773–PHXFJM, 2010 WL 5013829 at *6 (D.Ariz. Dec.3, 2010); *Ayscue v. Astrue*, 5:08–CV–595–FL, 2009 WL 3172121 at *14–15 (E.D.N.C. Oct.2, 2009); *Anderson v. Comm'r of Soc. Sec.*, CIV. A. 07–1680 JAP, 2008 WL 619209 at *9 (D.N.J. Mar.4, 2008); *Seamon v. Astrue*, 07–CV–0588–BBC, 2008 WL 3925829 at *12 (W.D.Wis. Aug.19, 2008) aff'd, 364 F. App'x 243 (7th Cir.2010); *Golas v. Colvin*, 3:13–CV–4110–BN, 2014 WL 2587633 at *9 (N.D.Tex. June 10, 2014); *Rickman v. Colvin*, 6:12–CV–01201–SI, 2013 WL 4773627 at *10–11 (D.Or. Sept.4, 2013); *Forsythe v. Astrue*, ED CV 10–403–PJW, 2011 WL 3516166 at *1 (C.D.Cal. Aug.11, 2011); *Richardson v. Colvin*, CIV13–467–R, 2014 WL 1490958 at *4 (W.D.Okla. Apr.15, 2014); *Arti v. Colvin*, EDCV 12–661 AGR, 2013 WL 2417969 at *3 (C.D.Cal. June 3, 2013); *Parker ex rel. Parker v. Comm'r, Soc. Sec. Admin.*, 2:13–CV–19–DBH, 2014 WL 220705 at *5 (D.Me. Jan.21, 2014); *Lara v. Colvin*, CIV–12–1249–L, 2014 WL 37746 at *4 (W.D.Okla. Jan.6, 2014); *Hewes v. Astrue,* 1:10–CV–513–JAW,

2011 WL 4501050 at *6 (D.Me. Sept.27, 2011) aff'd, 1:10–CV00513–JAW, 2011 WL 4916460 (D.Me. Oct.17, 2011)).

Plaintiff also cites *Ferguson v. Schweiker*, 765 F.2d 31, 37, 36-37 (3d Cir. 1985) to argue that the ALJ's interpretation of objective evidence was impermissible. (Pl. Brief at 13). *Ferguson* is one of many cases holding that an ALJ may not supplant a treating source medical opinion with only reinterpretation of medical evidence, and no contradictory medical opinions. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (internal citations omitted). However, these cases do not address how an ALJ may weigh opinion evidence when contradictory opinions exist. *Id.*

The ALJ did not reinterpret evidence to contradict a medical expert's interpretation. (Tr. 18-22). Dr. McLaughlin's medical opinion and the non-examining, non-treating opinion support the ALJ's RFC. (Tr. 18-22). The only statement in the record that supports Plaintiff's claim was the November 14, 2012 statement from Dr. Falatyn that Plaintiff would be unable to lift or carry any weight for twelve months or more. (Tr. 18-22). However, the ALJ notes that it is contradicted by another statement from Dr. Falatyn that Plaintiff would only be incapacitated for six months. (Tr. 21). Pursuant to *Plummer*, and ALJ may reject one treating source opinion in favor of another treating source opinion. *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999).

Moreover, an ALJ may reject a treating source opinion when non-medical evidence contradicts the opinion. *See* Standards for Consultative Examinations and

Existing Medical Evidence, 56 FR 36932-01 at 36936; *Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005) (ALJ permissibly rejected treating opinion "in combination with other evidence of record including Claimant's own testimony"); *Kays v. Colvin*, No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014); *Marr v. Colvin*, No. 1:13-cv-2499 (M.D.P.A. April 15, 2015). Plaintiff testified that he can lift up to twenty pounds. (Tr. 60). Plaintiff also stopped receiving treatment after December of 2012, when he reported "good relief" from his surgery, had normal examination, reported increased functionality, and indicated that he would follow-up as needed. (Tr. 609-611).  These non-medical findings contradict Dr. Falatyn's statement that he would be unable to work twelve months.

Finally, the ALJ may reject a treating source opinion with an opinion from a non-treating source. *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978) ("an administrative law judge is free to…choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who testified before him"). The ALJ must still ensure that the contradictory opinion provides substantial evidence. *See* 20 C.F.R. §404.1527(c)(2). The Third Circuit has indicated that a non-treating, non-examining opinion from a source who did not review an entire record was "not substantial." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Plaintiff identifies no Third Circuit case holding that an examining opinion is not substantial evidence to reject a treating source. (Pl. Brief); (Pl. Reply). Plaintiff fails to identify case law that the ALJ

was erroneously playing doctor under the facts of this case. (Pl. Brief); (Pl. Reply). The Court does not recommend remand on these grounds. The ALJ reasonably relied on the objective medical evidence, bolstered by Dr. McLaughlin's medical opinion, and the non-examining, non-treating opinion. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The ALJ may not rely on a lack of objective medical evidence alone. *See* SSR 96-7p. Here, however, the ALJ also relied on Plaintiff's conservative treatment after his surgery, which occurred within six months of his alleged onset date. (Tr. 18-22). This is a permissible rationale and an accurate characterization of the record. (Tr. 18-22).

Even if the ALJ erred in evaluating Plaintiff's activities of daily living, the objective medical evidence, Dr. McLaughlin's opinion, and conservative provide substantial evidence for the credibility assessment. *See Brumbaugh v. Colvin,* 3:14–CV–888, 2014 WL 5325346, at *16 (M.D.Pa. Oct. 20, 2014). The ALJ is entitled to deference with regard to credibility determinations. *See Szallar v. Comm'r Soc. Sec.*, No. 15-1776, 2015 WL 7445399, at *1 (3d Cir. Nov. 24, 2015) ("the ALJ's assessment of his credibility is entitled to our substantial deference") (citing *Zirnsak v. Colvin*, 777 F.3d 607, 612–13 (3d Cir.2014)). Moreover, "[n]either the district court nor this court is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir.1984)); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir.2011) ("Courts are not permitted to re-weigh the evidence or

impose their own factual determinations") (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Plaintiff fails to demonstrate that no reasonable person would have relied on these rationales to find him less than fully credible. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). The Court would not direct a verdict that Plaintiff should be found fully credible if the issue were before a jury. *Id.* The Court does not recommend remand on these grounds.

### E.  Medical Opinion

Plaintiff does not challenge the ALJ's treatment of the contradictory opinions from Dr. Falatyn. (Pl. Brief); (Pl. Reply); *See* Local Rule 84.40.4(b) ("The court will consider only those errors specifically identified in the briefs"). Plaintiff asserts that the ALJ failed to explain why the RFC included a limitation to 2 hours of standing, while consultative examiner Dr. McLaughlin opined that Plaintiff could perform 1-2 hours of standing. (Pl. Brief at 18). Defendant responds that the ALJ provided explanation, specifically that Dr. McLaughlin's opinion was credited to the extent it was consistent with the sedentary RFC with two hours of standing. (Def. Brief at 18). The ALJ also explained that he relied on the non-examining medical expert opinion that Plaintiff could walk for longer than 1-2 hours, to the extent it was consistent with the sedentary RFC with two hours of standing. (Tr. 21). The ALJ further noted that after Plaintiff reported good relief one month after his surgery, he did not return for follow-up and the record contains no further complaints of pain. (Tr. 19). The rationales provide sufficient explanation for why the ALJ found

that Plaintiff could stand for two hours, rather than one to two hours. If explanation allows meaningful judicial review, it suffices. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) (Court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned"); *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis" and instead must only "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."). The Court does not recommend remand on these grounds.

## VI.   Conclusion

The Court finds that the ALJ made the required specific findings of fact in determining whether Plaintiff met the criteria for disability, and the findings were supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Brown*, 845 F.2d at 1213; *Johnson*, 529 F.3d at 200; *Pierce*, 487 U.S. at 552; *Hartranft*, 181 F.3d at 360; *Plummer*, 186 F.3d at 427; *Jones*, 364 F.3d at 503. Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence requires

"more than a mere scintilla" but is "less than a preponderance." J*esurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Here, a reasonable mind might accept the relevant evidence as adequate.   Accordingly, it is HEREBY RECOMMENDED:

I.      This appeal be DENIED, as the ALJ's decision is supported by substantial evidence; and

II.     The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Dated: September 30, 2016                     _____s/Gerald B. Cohn_____
                                                               GERALD B. COHN
                                                    UNITED STATES MAGISTRATE JUDGE